United States District Court
Southern District of Texas
**ENTERED**
January 11, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSHUA EDWARDS, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:15-CV-299 |
| | § | |
| 4JLJ, LLC; dba J4 OILFIELD SERVICES, *et al*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

**ORDER DENYING RECONSIDERATION OF SANCTIONS AND FURTHER DENYING PERMISSIVE APPEAL**

Before the Court is "Defendants' Motion for Reconsideration of Sanctions, or Alternative Request for Permissive Appeal" (D.E. 277). Defendants seek relief from this Court's Order on Motion for Sanctions (Sanctions Order) (D.E. 269). For the reasons outlined below, the Court DENIES the motion to reconsider (D.E. 277) with respect to both its request for adjustments to the Court's Order and with respect to its request for permissive appeal.

**DISCUSSION**

The Sanctions Order (D.E. 269) sets out in detail the facts regarding Defendants' failure to disclose evidence in discovery, which facts the Court declines to repeat here. Suffice it to say that the Court demonstrated that Defendants made a concerted, repeated, and evolving effort to conceal evidence that they knew was highly relevant to the claims made in this case. Even when the Court ordered production, the effort was slow, piecemeal, and begrudging, with efforts to substitute self-serving evidence in place of the

production of objective data. Now, after being forced to exhume the data that they represented to have been lost or beyond their reach, they complain "no harm, no foul."

Defendants claim to have acted with great generosity in retrieving evidence at great expense and effort for an ungrateful opponent. Under such circumstances, they claim that shifting the burden of proof on the TCA exception[1] is out of proportion with the conduct at issue. The Court disagrees. And the issue of Plaintiffs' attorney's fees and costs expended to address this matter remains open as Defendants prolong this issue.

**A. Defendants' Resistance and Recalcitrance**

Defendants' briefing reinforces this Court's conclusion that Defendants have not yet received the message this Court is trying to send. The Court will not tolerate the destruction or concealment of evidence, the failure to respond accurately to discovery requests, and the repeated trial delays caused by Defendants' resistance to correcting their wrongdoing, all while threatening Plaintiffs with the costs Defendants are having to expend to correct their own failures. Because Defendants' efforts were willful with the intention of defeating Plaintiffs' effort to meet their burden of proof on the TCA exception, it is fitting that the Court shift that burden of proof to Defendants.

**Eve of Trial Revelation and Blame Game**. Because of Defendants' misrepresentations that there were no documents responsive to Plaintiffs' early request for FleetMatics data, this issue was not brought to the Court's attention until a final pretrial conference the day before the October 18, 2017 trial setting. The issue arose

[1] The Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy For Users or "SAFETEA–LU", PL 109–59, August 10, 2005, 119 Stat 1144 Technical Corrections Act of 2008 (TCA), which is an exception to the Motor Carrier Act (MCA) exemption from the Fair Labor Standards Act (FLSA).

during a discussion of the Plaintiff's burden of proof because Plaintiffs sought an adverse inference instruction based upon spoliation of evidence. Defendants blamed Plaintiffs for the delay because Plaintiffs made the mistake of taking them at their word that there were no documents responsive to their discovery requests. D.E. 226, pp. 14-16, 19-20, 52.

**Ignorance About Discovery Placed in Issue**. When the Court expressed the need to know whether the documents existed before ruling on the request for the spoliation presumption, Defendants' counsel stated a need to get information from their client about "what they had, what kind of system was maintained. Whether there was any sort of print out that was kept." *Id.*, p. 17. Defendants should have already had that discussion with their lawyers in order to respond to Plaintiffs' discovery requests. When Defendants could not provide a straight answer, Defendants' counsel called a 1-800 number for FleetMatics and accepted the representation of the operator who answered the call that records were destroyed after six months. *Id.*, p. 31.

**Effort to Dodge Consequences**. When it became apparent that at trial, Plaintiffs would question Defendants' witnesses about destruction of evidence, Defendants sought a motion in limine to prevent the jury from hearing such evidence. *Id.*, p. 43. And when the Court noted that Plaintiffs would be testifying about the system and its tracking abilities, Defendants sought to exclude their testimony through a motion in limine. *Id.* Defendants suggested that their failure to produce the evidence was irrelevant because the burden of proof rested on Plaintiffs and that the prejudicial effect of such evidence outweighed its probative value. *Id.*, pp. 43-45, 48.

The Court was quite concerned:

> THE COURT: And here's the little bit of an issue that I have. If I had put the burden on you [Defendants], you might've been trying to track that down. I'm not saying yes or no. I'm just saying you know, the fact that you didn't have the burden gives you no incentive to try to locate those documents or to turn them over.

*Id.*, p. 55. Defendants took no responsibility for having represented that the FleetMatics data was nonexistent.

**Slow Disclosure and Effort to Abandon Production**. The Court continued the trial date, resulting in substantial cost to Plaintiffs. *Id.* at 54. At a status conference two and one-half months later, Defendants represented that they were still working on finding out whether they could get the data. Minute Entry, January 3, 2018. So the Court suspended the trial date, entirely. *Id.* In an advisory filed February 7, 2018, the parties stated that Verizon (which owned FleetMatics at that time) had produced some, but likely a very small portion of, the missing data. D.E. 240.

In a telephone conference held the following day, Defendants represented that the data being recovered reflected diminishing returns and a lack of value to the case overall. They sought to be relieved from the expense of retrieval. D.E. 247, p. 8. Only after the Court put them on notice that she was considering shifting the burden of proof as a sanction, did Defendants offer to look harder for data on the specific vehicles at issue for the TCA exception. *Id.*, p. 10. On June 14, 2018, the Court entered the sanctions order, which shifted the TCA burden of proof and granted a spoliation inference instruction. D.E. 269. A week later, Plaintiffs filed a memorandum showing that there was still a

large gap in the data that had been produced with respect to the time frame at issue. D.E. 271.

At that point, Defendants began arguing that the data was not important because it was generated through a system that Plaintiffs abused—starting vehicles with master key fobs or without key fobs at all. D.E. 274, p. 9. The Court noted that the argument only reinforced the basis for her sanctions order:

> THE COURT: Okay, but all that evidence does is explain the documents, --
>
> MR. PIPITONE: Right.
>
> THE COURT: -- why they might not be credible or they might not really be on point. I am still hearing a resistance from the defense regarding this matter after I was very clear in my order –
>
> MR. PIPITONE: Yeah.
>
> THE COURT: -- that it was a problem.
>
> MR. PIPITONE: And, your Honor, I know --
>
> THE COURT: So you want to --
>
> MR. PIPITONE: -- I know --
>
> THE COURT: -- continue, go ahead. It just confirms that what I was seeing is what we're still doing.

D.E. 274, p. 11

> MR. PRICE: Your Honor, I object on submitting these. This is evidence, if they had it, it should have been submitted in discovery --
>
> THE COURT: I know, it just continues. I'm going to admit it but you can certainly argue that. But the -- I'm

frankly a bit surprised --

MR. PIPITONE: All right.

THE COURT: -- that this continues. But go ahead.

MR. PIPITONE: Your Honor, the whole point of this is precisely what I'm going to say now. This information and the reason it doesn't have any value --

THE COURT: That doesn't mean you don't produce it. It may not have value to you. You may not think it has value. But it was requested and they're entitled to see it.

D.E. 247, pp. 12-13

MR. PIPITONE: And, your Honor, our response to those requests in the past have been it's burdensome to get, which --

THE COURT: Yeah, and then you also --

MR. PIPITONE: -- the facts truly prove.

THE COURT: -- said we don't have any. It may have been prior counsel but you also said we don't have any.

MR. PIPITONE: Right, right.

THE COURT: No, no, no, that's not just okay. That is a serious representation so that's why I'm kind of shocked that the defense is continuing this line --

MR. PIPITONE: Right.

THE COURT: -- without saying, you know what, we messed up, there were some documents out there, we didn't mean it, I've never seen that. It continues to be a fight about this. I mean, I don't know how I could have been more clear in my order that I saw a problem with the way this was handled. Can I accept that, you know, there was a change in counsel and we missed that or the other? But what I can't accept is the continuous trying to, I don't know, make the Court believe these are not relevant, shouldn't have been preserved,

shouldn't have been turned over? Was the Court just supposed to pass over their, we don't have any anyway? I really thought there was going to be a different attitude today, but I guess not. And that's fine. I will deal with what you all bring to me.

*Id.*, pp. 13-14

THE COURT: Okay, what would it mean to you if this side told you, I don't have any of those records? Don't you think as a representation by an officer of the Court, you would take that as it is?

MR. PIPITONE: That would bother me greatly, Judge. But let me qualify one thing about that. If I were to say, I don't have access to those records, or I don't have control over those records would be two different things. I don't want to --

THE COURT: You know what?

MR. PIPITONE: I don't want to --

THE COURT: We'd better stop this. Just go on.

MR. PIPITONE: Okay.

THE COURT: I think it's getting worse for the defense here.

*Id.*, p. 15

Up to this point, the record reflected that there were outstanding requests for FleetMatics data with no assertion that the data had been produced. Defendants began this case by failing to disclose the existence of pertinent evidence and they continued to suggest that doing so was no big deal.

**Threatening Plaintiffs for Making Discovery Requests**. After asking for more time to produce the records that should have been preserved and produced at the outset of

this case, and after stating they would retrieve the records at their own cost, Defendants threatened to seek recovery of those costs from Plaintiffs if neither side used the material as evidence at trial. *Id*., p. 18. Defendants stated that they had to pay for 142 man-hours of time for FleetMatics to produce everything that was left. However, Defendants only intended to produce what was left regarding the smaller vehicles covered by the TCA exception, leaving out remaining data on the vehicles presumably relevant to the MCA exemption. D.E. 274, p. 21; D.E. 276.

> MR. PIPITONE: Just so I understand then, too, your Honor, does your sanction nonetheless apply as to the shifting of the burden of proof --
>
> THE COURT: At this time it does because of the delay and, I mean, we could address that further. But we are now three years later from when the requests were sent out so, I mean, I think that's a problem, what was done and the way it was addressed and continues to be addressed frankly.

D.E. 274, p. 30

**Minimizing Wrongdoing**. In their motion to reconsider, Defendants show no appreciation for the gravity of their wrongdoing. They describe the failure to produce the records at the outset as an "initial inability to appreciate the Parties did not have a shared understanding of the status of the records." D.E. 277, p. 2. What is clear is that Defendants advanced objections to production and when Plaintiffs threatened a motion to compel, Defendants represented that there were no records subject to compelled disclosure. Having now found the records with the Court's insistence, Defendants seem to think they have purged themselves of their wrongdoing.

On November 2, 2018, the parties filed a joint notice regarding the production of the FleetMatics documents, stating that FleetMatics had complied with discovery requests and Defendants had produced "everything" to Plaintiffs' counsel.

**B. The Court's Discretion**

When a litigant undertakes conduct that abuses the discovery process or challenges the fair and orderly disposition of cases, trial courts may call upon powers conferred by the Federal Rules of Civil Procedure and their inherent power to sanction the abusive conduct.

> It has long been understood that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."

*Chambers v. NASCO, Inc*., 501 U.S. 32, 43 (1991) (citations omitted). "Because of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id*. at 44-45 (citations omitted).

Pursuant to Federal Rule of Civil Procedure 37(a)(5), a successful movant on a motion to compel is entitled to attorney's fees and costs associated with prosecuting the motion. Sanctions for failure to disclose information in discovery or to comply with a court order may justify additional sanctions, including imposition of a conclusively

presumed fact, striking a claim or defense, excluding specific evidence, imposing a spoliation presumption, striking pleadings in whole or in part, staying further proceedings, dismissing the action in whole or in part, rendering a default judgment against the disobedient party, and treating failure to obey as contempt of court. Rule 37(b), (c). Consistent with a court's inherent power, a trial court has broad, though not unlimited, discretion to fashion appropriate sanctions for parties who disobey discovery orders. *See, Chilcutt v. United States*, 4 F.3d 1313, 1320 (5th Cir. 1993).

In exercising its discretion and to be fair, courts should consider: (1) the bad faith or willfulness of the conduct; (2) the proportionate punitive value of the sanction; (3) the sanction's deterrent effect even beyond the litigation at hand; (4) the prejudice suffered by the opposing party; and (5) whether the sanctionable conduct is attributable to the party or his representatives. *Id.*; *Batson v. Neal Spelce Associates, Inc.*, 765 F.2d 511, 514 (5th Cir. 1985); *Estate of Spear v. Comm'r*, 41 F.3d 103, 111 (3d Cir. 1994) (following *Chilcutt*). The Court is not required to impose minimal sanctions and wait to see whether they work before moving to greater sanctions applicable to continuing or additional conduct. Rather, the Court is required only to consider whether lesser sanctions would be sufficient to address the conduct. "District courts, before dismissing an action with prejudice under Fed.R.Civ.P. 41(b) should make express findings concerning whether less drastic sanctions would equally serve the punishment and deterrent aspects of the rule." *Batson*, 765 F.2d at 516 n.2.

**Bad Faith/Willfulness**. As set out in the Court's Sanctions Order (D.E. 269), Defendants had a subscription for data collection regarding information directly

applicable to the issues in this case. At about the time this case was filed, Defendants terminated the subscription prematurely and failed to retain any of the data. When Plaintiffs requested the data, they claimed that it was burdensome to produce, even though it was still readily and easily available to them. It would only be with the passage of time that FleetMatics might purge the data from their system.

When Plaintiffs pushed for the information, Defendants told them it did not exist, leading Plaintiffs to believe that Defendants had destroyed it, which would trigger a spoliation presumption. When the request for the spoliation presumption was brought to the Court's attention, Defendants persisted in arguing that the data could not be recovered.

Sanctions for willfulness or bad faith, such as was demonstrated here, can include "death penalty" sanctions, striking a party's claims or defenses, in part because of the deterrent value of such severe sanctions. *Batson*, 765 F.2d at 514. Severe sanctions need to be available to the courts "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (per curiam).

**Proportionate/Punitive Value**. This discovery process occurred over a span of time in which the law was unsettled regarding which party bears the burden of proof on the TCA exception. Defendants failed to produce the evidence at the same time that they sought a determination that the burden of proof with respect to the TCA exception was on Plaintiffs.

This Court did rule that, as a matter of law, Plaintiffs bear the burden of proof on the TCA exception and the Fifth Circuit later came to the same conclusion, establishing the law of this circuit. *Carley v. Crest Pumping Technologies, L.L.C.*, 890 F.3d 575, 576 (5th Cir. 2018). Unfortunately, that allowed Defendants' concealment of evidence to work in their favor. However, the Court refused to fault Plaintiffs for accepting Defendants' representation that they had no information responsive to the discovery requests. Additionally, the Court considered imposing the spoliation presumption, which required the Court to determine whether the evidence was, in fact, destroyed.

Even then, Defendants produced a small amount of data and asked the Court to accept it to suffice for the remainder. Defendants complained that it was too costly to recover the data, failing to appreciate that it was their own conduct that rendered it so. Requiring Defendants to pay some small monetary amount is insufficient. According to Rule 37, Plaintiffs are entitled to their attorney's fees and costs related to the production of the FleetMatics data.

The parties recently informed the Court that "everything" had been produced to Plaintiffs' counsel. Therefore, a spoliation presumption is no longer appropriate and has already been eliminated from the Court's order. D.E. 274, p. 29. The next available sanction in order of severity is the switching of the burden of proof. While this is not a common sanction in case law, it is not as harsh as other more common sanctions, such as stipulating that a fact is established or striking a defense in its entirety. *See Chilcutt*, 4 F.3d at 1319. Shifting the burden of proof still allows Defendants the opportunity of defeating Plaintiffs' TCA exception from Defendants' MCA exemption. So while

Defendants complain of the punitive effect of this sanction, it is not on the severe side of the spectrum, considering the conduct here.

**Deterrence**. There must be consequences for the type of conduct evidenced in this case. It is inconsistent with the dignity of judicial proceedings to suggest that the recovery of highly relevant data after the failure to produce it has any deterrent effect. That would signal to litigants that if they want to interfere with discovery, it is worth a try—there is nothing to lose. The shifting of the burden of proof on the issue to which the discovery applies is the least severe of the effective options available to the Court.

**Prejudice**. Defendants claim that there is no prejudice to Plaintiffs now that they have produced the discovery Plaintiffs sought. They state in their reply that "the playing field is now level." D.E. 279, p. 6. But prejudice is not just about the state of discovery. Here, Plaintiffs were ready to go to trial, armed with a request for a spoliation presumption, on October 18, 2017. That trial date was lost and it has taken another year for Defendants to produce the discovery and litigate their objections to the resulting sanctions. To some extent, the cliché "justice delayed is justice denied" applies to the Plaintiffs having to wait, being denied potential recoveries at a time when they might most have needed it.

But the delayed discovery also has an immeasurable effect on how this case was prepared for trial prior to October 17, 2017. Plaintiffs took depositions without the data on which to propound questions and Defendants are now prepared to undermine the probative value of the previously-concealed data with collateral arguments not fully developed prior to trial. And Plaintiffs had to develop evidence that would fill the gap

left by the data they thought was missing. Even if they were able to conduct discovery anew, the loss of time and resources is compounding.

Moreover, we will never know if timely production of the FleetMatics data would have fostered a more productive dialog among attorneys or a more fruitful mediation, all of which might have brought an earlier resolution. Instead, concealment of the data allowed Defendants to dig in their heels and prolong this case. The administration of justice for these Plaintiffs has been permanently affected. And they have suffered monetary costs insofar as Plaintiffs' counsel have had to prepare on the basis of a moving target with respect to the TCA exception and slow production of FleetMatics data.

**Attorney or Client**. Nothing in the record suggests that Defendants' counsel (past or present) advised or encouraged Defendants to conceal evidence. Despite the frustrations of the last years' proceedings, the Court is not yet prepared to sanction defense counsel for ill-advised advocacy. The sanction imposed is directed at Defendants for their own conduct, for their attempts to perpetuate its effects, and for their lack of remorse.

**Conclusion**. The conduct warrants far more severe sanctions. The Court's choice to shift the burden of proof on the TCA exception allows Defendants to prove their defense. At the same time, it sends the message that such an affront to the administration of justice and the requirements of the discovery rules will not be tolerated and provides some relief to Plaintiffs, whose discovery was adversely impacted by the late production of highly relevant data.

### C. Sanctions Order Does Not Meet Standard for Permissive Appeal

The Sanctions Order is not immediately appealable unless made so pursuant to 28 U.S.C. § 1292(b). This requires the Court to state its opinion that "such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." The criteria for the issuance of sanctions is well-settled. And the application of those criteria to Defendants' conduct here was carefully considered, is proportionate to Defendants' wrongdoing, and is confirmed by Defendants' failure to accept responsibility for their attempt to conceal evidence and to delay trial of this case.

The propriety of the sanction is supported by the Fifth Circuit's opinion in *Chilcutt*, cited above. 4 F.3d 1313. In that case, the trial court was confronted with the government's bad faith in concealing information from disclosure in discovery.

> Although the court believed that a default judgment as to liability or damages was justified, it decided instead merely to deem that the *prima facie* elements of the plaintiffs' liability claim were established for the purposes of the case. The court allowed the Government to present evidence of its affirmative defenses and required the plaintiffs to prove damages.

*Chilcutt*, 4 F.3d at 1319. "Because the court's ruling did not preclude the Government from presenting its case in chief, the sanction was a far cry from a default judgment." *Id*. at 1320. The Fifth Circuit then referenced *Insurance Corp. of Ireland, Ltd. v. Compagnie Des Bauxites de Guinee*, 456 U.S. 694, 707 (1982), regarding relating the sanctions to the conduct, writing:

> Because the discovery in issue targeted personal-jurisdiction evidence, the [Supreme] Court had no problem in finding that the deemed finding—personal jurisdiction—was sufficiently related to the claim sought to be proved by discovery. The Court therefore found that the district court did not abuse its discretion in sanctioning the excess insurers.

*Chilcutt*, 4 F.3d at 1321. Ultimately, the Fifth Circuit approved of the *Chilcutt* trial court's sanction deeming a prima facie case to have been established, thus shifting the burden of proof to the government. That sanction comports with an appropriate presumption that a party's refusal to produce the information is "an admission of the want of merit in the asserted defense." *Chilcutt*, 4 F.3d at 1324 (quoting *Hammond Packing Co. v. State of Ark*., 212 U.S. 322, 351 (1909) and citing *Insurance Corp. of Ireland,* 456 U.S. at 709). The sanction against Defendants in this case, which does not require a finding of willful or contumacious conduct, is appropriate under the law. *See id*. at 1322.

Defendants argue that there can be no sanctions under Rule 37 because the production of FleetMatics data will have been made in its entirety prior to trial. D.E. 277, p. 11. Defendants cite *Moody v CSX Transportation, Inc.*, 271 F. Supp. 3d 410, 425 (W.D.N.Y. 2017), as holding that changes to Rule 37 with respect to electronic evidence rejected sanctions for negligent or grossly negligent behavior. That argument misses the point. First, the case addresses the spoliation presumption, which has been eliminated here. Sanctions are still available for intentional acts to deprive a party of discovery. And as the Court has made clear, Defendants' acts were intentional, willful, in bad faith, and contumacious. Nothing about *Moody* counsels against the sanctions order imposed here.

Defendants' protestation that the shifting of the burden of proof is shocking under the circumstances proves nothing but that Defendants are, as yet, unconvinced of the error of their ways.[2] Permitting an interlocutory appeal would only exacerbate the prejudice to Plaintiffs that Defendants' conduct has already caused.

**CONCLUSION**

After carefully reviewing the record and noting that Defendants have expressed no mitigating issue regarding their failure to preserve and timely produce the requested information, the Court remains convinced that shifting the burden of proof on the TCA exception is an appropriate sanction. For the reasons set out above, the Court DENIES the motion to reconsider (D.E. 277), confirms its sanction of the shifting of the burden of proof on the TCA exception, and refuses to certify the sanctions order for interlocutory appeal.

ORDERED this 11th day of January, 2019.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE

[2] "[T]he Government's argument that its conduct was relatively minor and due solely to miscommunication and confusion makes it patent that the Government has yet to recognize that its conduct constituted serious infractions against the rules of discovery as well as against the district court, itself." *Chilcutt*, 4 F.3d at 1325. "However, even if the Government were to become penitent for its behavior, we do not believe that a lesser sanction would serve the deterrent purposes of Rule 37." *Id*.