UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| JOSHUA EDWARDS, *et al*, § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. 2:15-CV-299 |
| § | |
| 4JLJ, LLC; dba J4 OILFIELD SERVICES, § | |
| *et al*, § | |
| § | |
| Defendants. § | |

## ORDER AWARDING SANCTIONS

Before the Court is "Plaintiffs' Motion for Award of Attorney Fees and Expenses" (D.E. 325), which renews Plaintiffs' request for monetary sanctions previously denied without prejudice. *See* Motion, D.E. 225; Order, D.E. 269. Defendants timely filed their response (D.E. 327). For the reasons set out below, the motion is GRANTED IN PART and DENIED IN PART.

Defendants' handling of the FleetMatic's data cost Plaintiffs numerous expenses, delay costs, and the burden of attorney time and attention to motions, status conferences, and piecemeal production of incomprehensible data that, if handled properly, would have been retained in a user-friendly format that was searchable and could produce filtered reports at the outset of this litigation. Defendants' abuses of the discovery process warrant monetary sanctions available under Federal Rules of Civil Procedure 26 and 37.

### A. Expenses

Plaintiffs seek $3,546.74 in expenses. This includes $1,099.10 spent to rent a house for use during trial, which was forfeited as nonrefundable when the trial had to be

continued to allow for Defendants' late discovery responses. Defendants do not object to this expense. Neither do they object to $88.67 in hotel expenses for attendance at a hearing on the matter, $1,059.85 in mileage expenses for travel to Corpus Christi for a hearing and for the trial that was continued, $7.29 for postage, and $262.98 for a hearing transcript.

Plaintiffs' expenses also include $1,028.85 incurred to copy inconsistent records regarding FleetMatics data that were produced by Defendants. Defendants object only to this expense, arguing that their initial production of largely unusable data to Plaintiffs is irrelevant because Defendants later incurred the expense to translate it into usable data. Defendants' egregious conduct contributed to the production of reams' worth of data and they cannot be heard to complain that Plaintiffs should have anticipated Defendants' correction of their production and should not have printed and copied that production for their own analysis or for the Court's edification. The Court OVERRULES Defendants' objection to the $1,028.85 copy expense.

As a result, the Court GRANTS Plaintiffs' motion for sanctions insofar as it seeks $3,546.74 in expenses.

### B. Attorneys' Fees

### 1. The Lodestar Method.

In the Fifth Circuit, reasonable attorneys' fees are calculated using the lodestar method. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 323–24 (5th Cir. 1995). To determine the lodestar, the court must determine the reasonable number of hours expended by the attorney and the reasonable hourly rate for the attorney. The court then

multiplies the number of hours by the hourly rate. *Id*. at 324. The lodestar is intended to reflect "the prevailing market rates in the relevant community." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010). An attorney's requested hourly rate is prima facie reasonable when he or she requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates, and the rate is not contested. *Kellstrom*, 50 F.3d at 328.

### 2. Johnson Adjustments

There is a strong presumption in favor of the lodestar amount, but it may be adjusted up or down based on twelve factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). *Saizan v. Delta Concrete Prod. Co., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006). The factors considered in *Johnson* include: (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

"[T]he lodestar figure includes most, if not all, of the 'relevant factors' constituting a reasonable attorney's fee." *Perdue*, 559 U.S. at 553. Accordingly, enhancements based on the *Johnson* factors are rare but may be awarded in exceptional

circumstances. *Id*. at 552. An enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation. *Id*. at 553. Thus, the novelty and complexity of a case generally may not be used as a ground for enhancement because those factors presumably are reflected in the number of billable hours recorded by the attorney. *Id*. In addition, time limitations and the preclusion of other employment by the attorney generally are subsumed in the lodestar calculation. *Heidtman v. County of El Paso*, 171 F.3d 1038, 1043–44 (5th Cir. 1999).

### 3. Evidence

"'[T]he burden is on the applicant to produce satisfactory evidence that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (quoting *Blum v. Stenson*, 465 U.S. 886, 896, n.11 (2011)). Courts further require applicants to provide contemporaneous billing records or other documents, which are examined to determine which hours are compensable and which are not. *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 755 (S.D. Tex. 2008).

"The party seeking attorneys' fees must present adequately documented time records to the court. Using this time as a benchmark, the court should exclude all time that is excessive, duplicative, or inadequately documented." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). Parties seeking attorneys' fees have the burden of showing the reasonableness of the hours billed and also of proving that they exercised billing judgment. *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983). Counsel exercises billing

judgment when he or she documents hours charged and the hours written off as unproductive, excessive, or redundant. *Id.* at 434.

### 4. Compelling Discovery and Sanctions.

First, Plaintiffs seek fees incurred to respond directly to the various productions of FleetMatics data, the prosecution of their motion for sanctions, and the defense against Defendants' motion for reconsideration of sanctions. Plaintiffs' request attorneys' fees at a rate of $400 per hour, which is discounted from their regular rate of $475 per hour. The Court finds $400 per hour to be a reasonable rate, within the range of prevailing market rates. Additionally, Defendants did not contest this rate.

Without detailing the specific entries challenged or the time charged for each, Defendants list eight dates on which they object to conferences between Attorney Moulton and his clients, suggesting that they would have occurred regardless of any issue of sanctions for the failure to properly produce FleetMatics data. The Court disagrees. Conferences on October 16 and 17, 2017, are related to the final pretrial hearing on October 17, 2017, at which the status of production of FleetMatics data and whether Plaintiffs would get a spoliation presumption was a central issue. Because of that issue, the trial was continued for the express purpose of completing that production. Defendants cannot be heard to object to time required to advise Plaintiffs that the trial had been continued due to Defendants' failure to produce this discovery.

On November 20, 2017, the challenged conference was related to Plaintiffs' evidence that computer monitors had been installed in Defendants' office to monitor FleetMatics data in real time. That is directly related to the discovery issue for which

Defendants are being sanctioned.  The challenged entries for December 13, 2017, do not relate to the hours claimed by Plaintiffs for the sanctions issue; rather they relate to the summary judgment issue.  The challenged entry for January 9, 2018, was not claimed by Plaintiffs and is thus moot.  Defendants challenge conferences on January 10, 2018, but there are no conferences on that date appearing on either time sheet.  And the challenges to time on May 17 and 18, 2018, are moot as Plaintiffs do not seek reimbursement for any entries on those dates.  The Court thus rejects all of Defendants' challenges to specific date entries.

Plaintiffs seek a total of 311.9 hours of attorney time, attaching copies of billing records that contain itemized entries detailing how the time was spent.  The entries they have highlighted in yellow for inclusion in this analysis actually total 312.1 hours.  The Court has reviewed each entry, assigning it to one of six categories of work as follows:

|   | Category | Hours Billed | Hours Allowed |
|---|---|---|---|
| 1 | Prosecuting the motion for sanctions in written form, including assembling supporting evidence, reviewing the response, drafting a reply, and addressing Defendants' motion for reconsideration and request for interlocutory appeal | 117.5 | 117.5 |
| 2 | Communications directly addressing the sanctions effort with clients, opposing counsel, and co-counsel | 13.8 | 13.3 |
| 3 | Presentation of arguments regarding FleetMatics data production, sanctions, and spoliation in Court conferences | 11.6 | 11.6 |
| 4 | Efforts to enforce discovery of FleetMatics data, including review of requests and responses, drafting subpoenas, and formulating questions for depositions | 36.1 | 28.9 |
| 5 | Review of the FleetMatics data as it was received, including summarizing the data and determining what data was not yet produced | 89.4 | 44.7 |
| 6 | Travel to the courthouse for appearances in person at Court conferences | 43.7 | 43.7 |
|   | TOTAL | 312.1 | 259.7 |

As set out in the table, the Court generally credits the time spent in the first three categories as critical to the effort required to present the matter to the Court and obtain a sanctions remedy. However, the Court excludes the two entries for correspondence on January 9, 2018 (.4 - $190) and the entry claimed for correspondence on January 10, 2018 (.1 - $47.50), as inadequately explained as relating to the sanctions effort. The Court thus deducts $237.50 from the fees allowed in the second category.

With respect to the fourth category regarding enforcing discovery of the FleetMatics data, the evidence of record and arguments of counsel demonstrate that a large portion of this effort would have been unnecessary had Defendants timely and appropriately produced the FleetMatics data. It was also necessary to demonstrate to the Court that additional data was recoverable and should have been produced. Therefore, the Court discounts those hours by only twenty percent (20%), which represents the effort that would likely have been required without Defendants' failure to conduct this discovery in good faith. The result is 28.9 hours for enforcing discovery against a recalcitrant opponent.

With respect to the fifth category, Defendants object to an unspecified 140 hours of time spent reviewing and summarizing the FleetMatics documents. The Court counts only 89.4 such hours in connection with Plaintiffs' first claim for work done directly on the motion for sanctions. Defendants again argue that this work would have had to be done regardless of the sanctions effort. After reviewing the time sheets, it is clear to the Court that not all review and summarization of the FleetMatics data is included in

Plaintiffs' request. Moreover, the task of understanding the data was made far more arduous because of the piecemeal production and obtuse formatting provided.

Had the data been supplied timely, in full, and in the format made available to Defendants in their FleetMatics subscription, very little of the work Plaintiffs had to do to understand whether they had all of the data and what it conveyed would have been necessary. The entries reflect that Plaintiffs also worked some hours to summarize the data on an interim basis to keep the Court updated on the status of the discovery effort, work which would not have been required absent the sanctionable conduct. For these reasons, the Court discounts those hours by fifty percent (50%), acknowledging that some review of the records would have been required regardless of the sanctions dispute. This yields 44.7 hours for the fifth category.

The Court generally treats travel time as worth half of its full value because it does not demand the full attention of one's legal mind. Because the time entries do not show that travel was by a method that permitted the attorney to work while being transported, the rate for those hours is discounted by fifty percent (50%), resulting in a rate of $200 per hour.

The final sum of creditable hours related to the sanctions issue is 259.7. Multiplying 216 hours by the hourly rate of $400, renders a total of $86,400.00. Multiplying 43.7 hours by the hourly rate of $200, renders a total of $8,740.00, for a total attorneys' fee award of $95,140.00.

The Court GRANTS the motion for sanctions regarding attorneys' fees related to the sanctions issue in the amount of $95,140.00.

### 5. Motion for Summary Judgment

Second, Plaintiffs seek attorneys' fees incurred in drafting and prosecuting a motion for summary judgment regarding the FleetMatics data and the Technical Corrections Act (TCA) exception to the FLSA Motor Carrier Act (MCA) exemption, for a total of 61.9 hours. They claim this effort is indirectly related to the sanctioned conduct in that Plaintiffs' additional work was caused by Defendants' failure to timely produce the FleetMatics data, preventing them from including the arguments and the supporting FleetMatics data in Plaintiffs' original motion for summary judgment regarding the TCA and MCA. Defendants, responding to only 30 hours of the claim for this time, argue that the effort and time spent would have been required regardless of whether the arguments were included in the original motion or the additional motion for summary judgment.

There is undoubtedly a lost economy to all parties and the Court when an issue has to be revisited with new or revised arguments and evidence. At the same time, however, a large portion of Plaintiffs' summary judgment effort was the ordinary burden of litigation and getting all issues before the Court. Plaintiffs' request fails to show that any hours have been excluded or otherwise discounted in this part of their claim for time that would have been incurred, inevitably, had the FleetMatics data been timely and properly produced.

The Court DENIES the motion insofar as it seeks sanctions in the form of attorney hours spent prosecuting a second motion for summary judgment.

## CONCLUSION

For the reasons set out above, the motion for sanctions (D.E. 325) is GRANTED

IN PART and DENIED IN PART.  The Court awards to Plaintiffs $95,140.00 in attorneys' fees and $3,546.74 in expenses as sanctions against Defendants, jointly and severally.  Defendants are ORDERED to pay said sanctions to Plaintiffs within thirty (30) days of the date of this Order.

ORDERED this 27th day of March, 2019.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE